### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**BORIS ODYNOCKI**                                         **CIVIL ACTION**

**VERSUS**                                                         **No. 24-2341**

**DELTA AIRLINES INC**                                    **SECTION I**

### ORDER AND REASONS

Before the Court is defendant Delta Airlines, Inc.'s ("defendant") motion[1] to dismiss *pro se* plaintiff Boris Odynocki's ("plaintiff") complaint[2] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response[3] in opposition, and defendant filed a reply.[4] Upon the Court's order,[5] the parties also submitted supplemental briefing.[6] For the reasons that follow, the Court grants defendant's motion to dismiss in part and denies it in part.

### I.    BACKGROUND

On May 24, 2024, plaintiff alleges that he was denied boarding on a Delta flight from Bogota to New Orleans.[7] Plaintiff states that defendant had informed him by email that boarding for his flight would close at 2:40 p.m.[8] While plaintiff had difficulty finding the boarding area for his flight, he states that he arrived at the gate

---

[1] R. Doc. No. 6.

[2] R. Doc. No. 1. The Court construes these filings liberally as they were filed *pro se*. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

[3] R. Doc. No. 9.

[4] R. Doc. No. 10.

[5] R. Doc. No. 12.

[6] R. Doc. No. 13 (defendant's supplemental briefing); R. Doc. No. 14 (plaintiff's supplemental briefing).

[7] R. Doc. No. 1, at 3–4.

[8] *Id.* at 4.

to board shortly before 2:00 p.m., when defendant's employee denied him boarding because he had arrived too late.[9] After being denied boarding, plaintiff states that he received an additional email stating that his flight time had been adjusted from 2:55 p.m. to 3:30 p.m.[10] On this basis, plaintiff alleges that defendant's justification for denying him boarding—that he arrived too late—was a lie.[11] Plaintiff contends that there were no customer service agents to help him, and he incurred additional costs to purchase a new flight to New Orleans the next day.[12]

Plaintiff brings several federal-law claims for violations of the Federal Aviation Act ("FAA") as amended by the FAA Reauthorization Act of 2024 ("the Reauthorization Act") and claims for violations of various Department of Transportation ("DOT") regulations.[13] Plaintiff's complaint additionally brings state-law claims for breach of contract, fraud, breach of the duty of good faith and fair dealing, and intentional infliction of emotional distress.[14]

Defendant argues in its motion to dismiss that plaintiff does not have a private right of action for the violations of federal law and federal regulations as alleged in plaintiff's complaint.[15] Defendant also argues that plaintiff fails to state a claim for breach of contract and that any state-law claims asserted in the complaint are

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* at 4–5.
[13] *Id.* at 6–7.
[14] *Id.* at 1, 5–6.
[15] R. Doc. No. 6, at 8–9.

preempted and barred by the Montreal Convention and the Airline Deregulation Act ("ADA").[16]

## II.    STANDARDS OF LAW

### a.    Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must meet the requirement in Rule 8(a)(2), requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While this short and plain statement does not require "detailed factual allegations," it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the [plaintiff's] claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034,

---

[16] *Id.* at 1.

2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (citation and internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### b.    The Montreal Convention

The Montreal Convention, more formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, (the Convention) is a "multilateral treaty that 'governs the rights and liabilities of passengers and carriers in international air transportation.'" *Bridgeman v. United Cont'l Holdings, Inc.*, 552 F. App'x 294, 296 (5th Cir. 2013) (unpublished) (quoting *Galbert v. W. Carribean*

4

*Airways*, 715 F.3d 1290, 1292 (11th Cir. 2013)). The Convention was intended to reform its predecessor, the Warsaw Convention, "so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists." *Id.* (quoting *Sompo Japan Ins. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 780 (7th Cir. 2008)).

The Convention provides an airline passenger the exclusive remedy for the types of claims it covers: death and injury to passengers pursuant to Article 17(1), damage to baggage pursuant to Article 17(2), damage to cargo pursuant to Article 18, and delay pursuant to Article 19. *White v. Emirates Airlines, Inc.*, 493 F. App'x 526, 529 (5th Cir. 2012) (unpublished); Convention for the Unification of Certain Rules for International Carriage by Air, arts. 17–19, May 28, 1999, ICAO Doc. 9740, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734, at *33–34 (2000) [*hereinafter* Montreal Convention]. The Convention "preempts state-law causes of action relating to the international carriage of persons, baggage, and cargo, but . . . only to the extent they fall within its substantive scope." *Bridgeman*, 552 F. App'x at 296.

Defendant argues that the Convention bars plaintiff's claim for intentional infliction of emotional distress.[17] With respect to this claim, Article 17(1) of the Convention establishes the conditions of liability for personal injury to passengers and states that "[t]he carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused death or injury took place on board the aircraft or in the course of any of the operations of

---

[17] R. Doc. No. 6-1, at 5–6.

embarking or disembarking." Montreal Convention, art. 17(1), 1999 WL 33292734, at *33.

### c.    Airline Deregulation Act

Prior to 1978, the FAA[18] provided for federal economic regulation of air carriers. Section 1106 of the FAA, however, contained a savings clause, which stated that "[n]othing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies."[19] This allowed states to apply their own laws to air carriers. *See, e.g.*, *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 300 (1976) (holding that a common-law claim for fraudulent representation based on overbooking practices could proceed because it was not "absolutely inconsistent" with the FAA and could "coexist as contemplated by § 1106").

In 1978, Congress enacted the ADA,[20] an amendment to the FAA, with the purpose of dismantling federal economic regulation of air carriers after determining that "efficiency, innovation, low prices, variety, and quality would be promoted by reliance on competitive market forces rather than pervasive federal regulation." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 335 (5th Cir. 1995) (en banc). To prevent states from frustrating this purpose by maintaining their own economic regulations, the ADA included a preemption provision, which prohibits states from enacting or enforcing "any law . . . relating to [air carrier] rates, routes, or services." *Id.* (quoting

---

[18] Federal Aviation Act of 1958, Pub. L. No. 85-726,72 Stat. 731.
[19] *Id.* § 1106 (codified as amended at 49 U.S.C. § 40120(c)).
[20] Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705.

Airline Deregulation Act of 1978, Pub. L. No. 95-504, § 105(a)(1), 92 Stat. 1705, 1708 (codified as amended at 49 U.S.C. § 41713(b)(1))). However, the ADA did not remove the savings clause that existed as part of the FAA.

In determining whether a state law relates to rates, routes, or services and is preempted by the ADA, the U.S. Supreme Court adopted a broad construction of "relating to" and held that state enforcement actions are preempted if they "hav[e] a connection with or reference to airline 'rates, routes, or services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992). Pursuant to this broad construction, the court stated that even laws of general applicability and laws that may be applied consistently with federal law may be preempted if the law has a "forbidden significant effect" on rates, routes, or services. *Id.* at 385–88. Nonetheless, the court acknowledged that "'[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect." *Id.* at 390 (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 100 n.21 (1983) (alterations in original)).

The Fifth Circuit has defined "services" in the ADA to mean "a bargained-for or anticipated provision of labor from one party to another," which includes "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Hodges*, 44 F.3d at 336 (quotations and citation omitted). Proceeding with this definition, the Fifth Circuit has concluded that the services that were deregulated by the ADA include airline practices "in their economic or

contractual dimension but not insofar as the safety of the flight is involved." *Smith v. Am. W. Airlines, Inc.*, 44 F.3d 344, 347 (5th Cir. 1995).

In addition to allowing courts to enforce causes of action that do not relate to services, routes, or rates, the ADA likewise does not preempt enforcement of privately ordered obligations. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995). Courts may enforce self-imposed contract terms because those obligations are not state imposed. *Id.* "[S]tate-law-based court adjudication of routine breach-of-contract claims" is permissible so long as a court makes "no enlargement or enhancement [of the contract] based on . . . state laws or policies external to the agreement." *Id.* at 232–33.

## III.    ANALYSIS

The Court first addresses whether plaintiff has a private right of action allowing him to bring his federal-law claims. The Court then considers plaintiff's state-law claims.

### a.    Federal-Law Claims

For plaintiff's federal-law claims, plaintiff alleges that defendant violated various provisions of the FAA, as amended by the Reauthorization Act, and DOT regulations providing for compensation to bumped passengers.[21] Defendant argues that Congress did not intend to create a federal cause of action for plaintiff's claims and that plaintiff's federal-law claims should be dismissed.[22]

---

[21] R. Doc. No. 1, at 6–7.
[22] R. Doc. No. 6-1, at 8–9.

The Fifth Circuit has already held in *Casas v. Am. Airlines, Inc.* that the FAA, as amended by the ADA, did not create a private right of action. 304 F.3d 517, 520, 521 & n.6 (5th Cir. 2002). The court in that case applied the four-factor test as first articulated by the U.S. Supreme Court in *Cort v. Ash*, 422 U.S. 66 (1975). *Casas*, 304 F.3d at 521–22.

To determine whether a federal law creates an implied right of action, courts consider the four *Cort* factors:

> (1) Is this plaintiff a member of the class for whose "especial" benefit the statute was passed? In other words, does the statute create a federal right for this plaintiff?
> (2) Is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy?
> (3) Is it consistent with the legislative scheme to imply a private remedy?
> (4) Is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate?

*Lundeen v. Mineta*, 291 F.3d 300, 311 (5th Cir. 2002) (quoting *La. Landmarks Soc'y, Inc., v. City of New Orleans*, 85 F.3d 1119, 1122–23 (5th Cir. 1996)). When analyzing these factors, a court should "begin with the familiar presumption that Congress did not intend to create a private right of action." *La. Landmarks Soc'y, Inc.*, 85 F.3d at 1123 (internal quotation marks omitted). The plaintiff carries the burden of showing "that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Id.* (quoting *Victorian v. Miller*, 813 F.2d 718, 721 (5th Cir. 1987) (en banc)). "Where analysis of the first two *Cort* factors leads to the conclusion that Congress did not intend to create a private right of action, [courts] need not address the other two *Cort* factors." *Id.* at 1125.

Regarding the first factor, the court in *Casas* determined that the provisions that the plaintiff cited in the ADA were directed at the regulated air carriers and the Secretary of Transportation and that they "d[id] not expressly identify domestic air passengers as a class that Congress intended to benefit." *Casas*, 304 F.3d at 522 & n.8. The court therefore concluded that the provisions did not "confer a substantive right upon an identifiable class of persons to which [the plaintiff] belong[ed]" as an air passenger. *Id.* For the second factor, the court emphasized that the language and enforcement scheme of the ADA suggests that Congress intended to primarily rely on the Secretary of Transportation and Attorney General to bring enforcement actions and intended to deny private individuals the right to enforce its provisions. *Id.* at 522–23. With the first two factors weighing against an implied right of action, the court concluded that the FAA did not create such a right and declined to analyze the third and fourth factors. *Id.* at 523.

The Reauthorization Act became law on May 16, 2024[23]—a few days before the alleged events on May 24, 2024 that gave rise to plaintiff's complaint.[24] Because the Fifth Circuit decided *Casas* in 2002, it did not address whether the amendments in the Reauthorization Act provide a private right of action.

Plaintiff specifically cites §§ 503 and 505 of the Reauthorization Act.[25] Section 503 provides among other things that "an air carrier or a foreign air carrier shall, upon request . . . provide a full refund, including any taxes and ancillary fees, for the

---

[23] FAA Reauthorization Act of 2024, Pub. L. No. 118-63, § 503, 138 Stat. 1025, 1025.
[24] *See* R. Doc. No. 1, at 3–4.
[25] *Id.* at 7.

fare such carrier collected for any cancelled flight or significantly delayed or changed flight."[26] Section 505 requires air carriers to maintain a customer service telephone line, a customer chat option, and a monitored text messaging number that allow customers to communicate with live agents.[27] Like the ADA, nothing in Title V(A) of the Reauthorization Act—which contains §§ 503 and 505 and addresses consumer passenger experience improvements[28]—expressly provides a right of action for air passengers. The Court must therefore consider whether it creates an implied right of action.

The first *Cort* factor asks whether the plaintiff "belongs to an identifiable class of persons upon whom the statute has conferred a substantive right." *La. Landmarks Soc'y, Inc.*, 85 F.3d at 1123. "The issue is whether the statute expressly identifies [a] class Congress intended to benefit or whether Congress has instead framed the statute simply as a general prohibition or a command." *Lundeen*, 291 F.3d at 311 (internal quotations and citations omitted). "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

The Court concludes that the first factor does not favor finding an implied right of action. The language in §§ 503 and 505 is framed as instructions to the regulated

---

[26] FAA Reauthorization Act of 2024, Pub. L. No. 118-63, § 503, 138 Stat. 1025, 1188 (to be codified at 49 U.S.C. § 42305).
[27] *Id.* § 505 (to be codified at 49 U.S.C. § 42307).
[28] *Id.* at tit. V(A).

entity rather than focused on the person protected. The language is not rights-creating and does not expressly identify a class that Congress intended to benefit.

The background in the House Report for the Reauthorization Act confirms this focus. The report states that the need for the Reauthorization Act arose from threats to the United States' leadership role in aviation.[29] Specifically, the report highlights the Federal Aviation Administration's need for "tools and resources to keep pace with the rapidly advancing aviation sector" and the need to "serve all regulated entities in a safe, timely and efficient manner."[30] With respect to the provisions dealing with the passenger experience, the report highlights challenges to the aviation sector that were caused by the COVID-19 pandemic and the operational challenges that came with a subsequent increase in demand.[31] This background demonstrates a congressional focus on the regulated air carriers and the tools available to the Federal Aviation Administration rather than a focus on creating rights for airline passengers.

While passengers may benefit from specific provisions of the Reauthorization Act, these benefits are ancillary to the purpose of improving the U.S. aviation sector. Neither the text nor the purpose of the Reauthorization Act identifies an intent to confer substantive rights on airline passengers. The first factor weighs against finding an implied right of action.

The second *Cort* factor, whether Congress intended to create a private remedy, is the touchstone of the analysis courts use to determine whether there is an implied

---

[29] H.R. Rep. No. 118-138, at 210 (2023).
[30] *Id.*
[31] *Id.* at 213.

right of action. *La. Landmarks Soc'y, Inc.*, 85 F.3d at 1123. "[C]ourts must seek congressional intent from the language of the statute as a whole, legislative history of the statute, and the congressional purposes underlying the statute." *Shinault v. Am. Airlines, Inc.*, 936 F.2d 796, 801 (5th Cir. 1991).

The Court concludes that the second factor also weighs against finding an implied private right of action. As the court in *Casas* noted, the FAA creates a detailed remedial scheme that suggests that Congress intended to deny private individuals the right to enforce its specific provisions. *Casas*, 304 F.3d at 523. This enforcement contemplates investigations by the Secretary of Transportation and administrative proceedings that may result in civil penalties. *See* 49 U.S.C. § 46101 (providing for agency investigations and orders to compel compliance); *id.* § 46301 (providing for civil penalties). The Secretary of Transportation or Attorney General may likewise file a civil lawsuit in federal court to enforce the law or an administrative order. *Id.* §§ 46106–46107.

Aside from governmental actions to enforce its provisions, interested persons may bring a civil action in a district court of the United States to enforce the specific provision of the FAA that requires air carriers to hold a certificate from the Secretary of Transportation. 49 U.S.C. §§ 46108, 41101(a)(1). "When Congress has established a detailed enforcement scheme, which expressly provides a private right of action for violations of specific provisions, that is a strong indication that Congress did not intend to provide private litigations with a means of redressing violations of other

sections of the Act." *Casas*, 304 F.3d at 523 (quoting *Diefenthal v. C. A. B.*, 681 F.2d 1039, 10409 (5th Cir. 1982)).

The Reauthorization Act did not meaningfully amend provisions of the FAA dealing with enforcement or otherwise mention a private remedy in addition to the limited private right of action provided in 49 U.S.C. § 46108. The Reauthorization Act's language includes no evidence that Congress intended to create a private right of action with respect to §§ 503 and 505. Accordingly, because the first and second *Cort* factors weigh against an implied right of action, the Court declines to analyze the third and fourth factors.[32] Plaintiff has no private right of action to enforce the FAA as amended by the ADA and the Reauthorization Act.

Because the FAA as amended does not provide a private right of action, regulations implemented pursuant to authority granted by the FAA likewise cannot provide a private right of action. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Casas*, 304 F.3d at 520 (quoting *Sandoval*, 532 U.S. at 291).

Plaintiff specifically cites 14 C.F.R. §§ 250.2b, 250.5, and 250.8 in his complaint.[33] These regulations were adopted pursuant to regulatory authority granted by the FAA as amended. Oversales, 47 Fed. Reg. 52980-01, 52985 (Nov. 24, 1982). Plaintiff therefore has no private right of action for his claims alleging

---

[32] *C.f. La. Landmarks Soc'y, Inc.*, 85 F.3d at 1125 ("Where analysis of the first two *Cort* factors leads to the conclusion that Congress did not intend to create a private right of action, [courts] need not address the other two *Cort* factors.").
[33] R. Doc. No. 1, at 6–7.

violations of the FAA or the cited DOT regulations, and his federal claims must therefore be dismissed.

### b.    State-Law Claims

### i.    *Breach of Contract*

Plaintiff's primary state-law claim is for breach of contract. Plaintiff states that defendant wrongfully refused to transport him on its flight despite entering into a contract for travel services by selling him a ticket.[34] Defendant's motion to dismiss asserts that plaintiff's breach-of-contract claim is barred by the ADA to the extent that these claims are not based on contractual terms set out in the parties' agreement.[35] Defendant does not argue that plaintiff's breach-of-contract claim is preempted by the Montreal Convention as a claim for delay.[36]

The *Wolens* exception, which provides that courts may enforce privately ordered obligations consistent with the ADA,[37] plainly applies to plaintiff's breach-of-contract claim. Defendant's suggestion that plaintiff's claim relies on a state-imposed obligation because plaintiff cites to the Louisiana Civil Code and the Uniform Commercial Code[38] is misplaced. The *Wolens* case made clear that "state-law-based court adjudication of routine breach-of-contract claims" is permissible so long as a

---

[34] *Id.* at 1, 5.

[35] R. Doc. No. 6-1, at 8.

[36] In deciding whether a breach-of-contract claim amounts to a claim for delay that is covered by the Convention, courts often hold that a claim amounts to a delay when the airline offers a reasonable alternative. *See Hebert v. Am. Airlines, Inc.*, No. CV 16-345, 2016 WL 3517795, at *3 (E.D. La. June 27, 2016) (Engelhardt, J.) (citing cases).

[37] *See Wolens*, 513 U.S. at 228–29.

[38] *See* R. Doc. No. 6-1, at 9.

court makes "no enlargement or enhancement [of the contract] based on . . . state laws or policies external to the agreement." *Id.* at 232–33. Defendant points to no basis from which the Court can conclude that state law would enhance or enlarge plaintiff's ordinary breach-of-contract claim.

Alternatively, defendant argues that plaintiff fails to state a claim for breach of contract.[39] Defendant contends that because the contract of carriage—as the contract between the parties—states that defendant may cancel a reservation if a passenger does not comply with check-in and boarding deadlines, defendant did not breach its contract with plaintiff.[40]

This argument relies on disputed factual questions and must therefore fail. Although plaintiff alleges in his complaint that he had difficulty finding the boarding area on the day of his flight, he states that "he discovered it shortly before 2 [p.m.]" and "attempted to enter the boarding area."[41] He also states that communications from defendant informed him that boarding for his 2:55 p.m. flight would close at 2:40 p.m.[42] Far from admitting failure to comply, plaintiff's complaint appears to allege that he complied with all check-in and boarding deadlines. Because the Court accepts plaintiff's factual allegations and draws all reasonable inferences in his favor for the purpose of this motion, *see Lovick*, 378 F.3d at 437, defendant's motion is denied with respect to plaintiff's breach-of-contract claim.

---

[39] *Id.* at 10.
[40] *Id.* at 11–12.
[41] R. Doc. No. 1, at 4.
[42] *Id.*

*ii.*     *Fraud and Breach of the Duty of Good Faith and Fair Dealing*

In addition to plaintiff's breach-of-contract claim, plaintiff appears to state a claim for fraud and for breach of the duty of good faith and fair dealing.[43] Defendant argues that these claims are preempted by the ADA and should be dismissed because they "seek enforcement of state law that enlarges or enhances the terms defendant itself stipulated."[44] The Court first addresses plaintiff's claim for fraud and then addresses his claim for breach of the duty of good faith and fair dealing.

In *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282 (5th Cir. 2002), the Fifth Circuit considered whether the *Wolens* exception applied to claims for fraud. There, a travel agency entered into a contract with American Airlines ("American") in which American was required to pay the travel agency a commission for booking flights in accordance with American's published commission schedule. *Id.* at 284. Shortly after executing the agreement, American announced modifications to its commission schedule reducing the commission paid to travel agencies. *Id.* In its lawsuit for fraud and other claims, the travel agency alleged that American knew that it planned on changing its commission schedule when it entered into the agreement and that it should have disclosed the impending changes. *Id.* at 284–85.

Although the court acknowledged that a narrow reading of *Wolens* "might be interpreted to permit the litigation of extra-contractual common law business torts that do not directly involve airline passengers," it concluded that a better reading of

---

[43] *See id.* at 5–6.
[44] R. Doc. No. 6-1, at 9.

*Wolens* required preemption. *Id.* at 288. While some business dealings will not "relate to" prices, routes, and services, the court stated that the travel agency's claim for fraud regarding contracted commissions was preempted because it had a connection with American's prices and services and did not seek to enforce self-assumed contractual obligations. *Id.* at 288–89.[45]

Plaintiff's claim for fraud appears to rely on allegations that defendant's employees misrepresented to him that he had arrived at the gate too late when he had not and/or that defendant had closed boarding before the time that defendant advised in official communications.[46] This claim has a connection to defendant's boarding procedures and therefore relates to defendant's services within the meaning of the ADA. Accordingly, plaintiff's claim for fraud is preempted.

The Court next addresses plaintiff's claim for breach of the duty of good faith and fair dealing. Following *Wolens*, the Supreme Court held in *Northwest, Inc. v. Ginsberg* that state-law claims for breach of the implied duty of good faith and fair dealing are preempted by the ADA "if it seeks to enlarge the contractual obligations that the parties voluntarily adopt." 572 U.S. 273, 276 (2014). In so holding, the court acknowledged that the doctrine does not appear to have any precise, uniform meaning despite being recognized in most states in some form. *Id.* at 285. While some states

---

[45] An affirmative defense for fraudulent inducement, however, was not preempted because it is "related to the fundamental issue in contract actions" of determining whether there is mutual assent. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 289 (5th Cir. 2002). "The defense does not reflect a state policy seeking to expand or enlarge the parties' agreement." *Id.* at 290.

[46] *See* R. Doc. No. 1, at 4.

"use the doctrine to effectuate the intentions of parties or to protect their reasonable expectations," others "employ the doctrine to ensure that a party does not violate community standards of decency, fairness, or reasonableness." *Id.* at 286 (internal quotations and citations omitted). If states do not allow parties to disclaim the duty of good faith and fair dealing, then the obligation is imposed by law rather than implied from the parties' contract. *See id.* at 287. In such a case, "a breach of covenant claim is pre-empted under the reasoning of *Wolens*." *Id.*

Defendant points to a choice-of-law provision in its contract at carriage stating that Georgia law applies.[47] Plaintiff does not dispute that Georgia law governs his claims.[48] Louisiana law provides that contractual choice-of-law provisions are presumed valid, unless the chosen law "contravenes the public policy" of the state whose law would otherwise apply. *See* La. C.C. art. 3540. "The party who seeks to invalidate a contractual choice of law provision bears the burden of proving either that the provision is invalid or that the application of the 'chosen' law would violate public policy." *Diversified Maint. Sys., Inc. v. J. Star Enterprises, Inc.*, No. CV 22-959, 2022 WL 17476950, at *6 (E.D. La. Dec. 6, 2022) (Brown, C.J.). Because plaintiff does not argue that the provision is invalid or that it contravenes public policy, the Court applies Georgia law in accordance with the parties' choice-of-law provision.

"Generally, every contract governed by Georgia law 'imposes upon each party a duty of good faith and fair dealing.'" *Ohio Cas. Ins. Co. v. Beall*, No. 3:23-CV-00060-

---

[47] R. Doc. No. 13, at 1–2.
[48] R. Doc. No. 14, ¶¶ 2, 5.

TES, 2024 WL 3993851, at *7 (M.D. Ga. Aug. 29, 2024) (quoting *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 636 S.E.2d 139, 141 (Ga. Ct. App. 2006)). "The implied covenant modifies the meaning of all explicit terms in a contract," but it "cannot be breached apart from the contract provisions that it modifies and therefore cannot provide an independent basis for liability." *Adr1assist, LLC v. Lima One Cap., LLC*, 580 F. Supp. 3d 1293, 1300 (N.D. Ga. 2022). To state a clam, a plaintiff must therefore allege a "breach of an actual, express contract term." *Id.*

The implied duty of good faith and fair dealing "requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performances." *Hunting Aircraft, Inc.*, 636 S.E.2d at 141 (Ga. Ct. App. 2006) (quoting *Camp v. Peetluk*, 585 S.E.2d 704, 708 (Ga. Ct. App. 2003)). "[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." *Id.* (quoting *Camp*, 585 S.E.2d at 708). "However, when a contract expressly grants one party absolute or uncontrolled discretion in making a decision, then no duty of good faith is implied as to that decision." *Ohio Cas. Ins. Co.*, 2024 WL 3993851, at *7.

Speaking of the duty of good faith and fair dealing, Georgia courts have stated that "[a]n implied term in an agreement exists where it is reasonable and necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they deemed it unnecessary to state." *WirelessMD, Inc. v. Healthcare.com Corp.*, 610 S.E.2d 352, 355 (Ga. Ct. App. 2005) (quoting *Fisher v. Toombs County Nursing Home*, 479 S.E.2d 180, 184 (Ga. Ct. App. 1996). Georgia

courts examine the language of the contract and the circumstances of the case when determining whether a contractual term is implied. *Id.* "When the contract is silent, principles of good faith . . . fill the gap. They do not block use of terms that actually appear in the contract." *Martin v. Hamilton State Bank*, 723 S.E.2d 726, 728 (Ga. Ct. App. 2012) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990)).

Pursuant to Georgia law, the implied duty of good faith and fair dealing seems intended to effectuate the intent of the parties. Any implied duty can be disclaimed by clear language expressing an intent to grant a party absolute discretion. The Court therefore concludes that plaintiff's claim is not preempted by the ADA in accordance with the reasoning in *Northwest, Inc. v. Ginsberg*. The Court will grant defendant's motion to dismiss with respect to plaintiff's claim for fraud. However, the Court will deny defendant's motion with respect to plaintiff's claim for breach of the implied duty of good faith and fair dealing.

### iii.    *Intentional Infliction of Emotional Distress*

Plaintiff next claims that defendant knowingly and intentionally caused him emotional pain and suffering when it bumped him from his flight without warning or explanation.[49] He states that he attempted to enter the boarding area when he "was stopped by [defendant's] employee who declared that [he could not] board the aircraft because he came too late."[50] Plaintiff does not make any claim that he was physically

---

[49] R. Doc. No. 1, at 1.
[50] *Id.* at 4.

injured by defendant. Defendant argues that this claim for emotional damages is preempted and barred by the Convention because the Convention does not allow recovery for purely emotional injuries.[51]

The Court must first determine whether plaintiff's alleged injuries occurred "in the course of any of the operations of embarking or disembarking." *See* Montreal Convention, art. 17(1), 1999 WL 33292734, at *33. If so, the Convention provides plaintiff's exclusive means of relief. *See White*, 493 F. App'x at 529. If not, the Convention does not preempt plaintiff's state-law claim. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 158 (1999).

Defendant does not cite to any cases addressing when the operations of embarking begin. And the Court is unaware of any cases in the Fifth Circuit addressing this question. However, the Fifth Circuit has acknowledged that "the phrase 'in the course of any of the operations of embarking' 'strongly suggests that there must be a tight tie between an accident and the physical act of entering an aircraft.'" *Bridgeman*, 552 F. App'x at 297 (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 317 (1st Cir. 1995)).

Other circuit courts to address the question of when the operations of embarking begin have concluded that injuries that occur when attempting to board a plane occur in the course of an operation of embarking. *See e.g.*, *Marotte v. Am. Airlines, Inc.*, 296 F.3d 1255, 1260 (11th Cir. 2002) (concluding that the plaintiff was "embarking" when his "party had their boarding passes in hand and were attempting

---

[51] R. Doc. No. 6-1, at 5–6.

to board the plane"); *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33–34 (2d Cir. 1975) (concluding that injuries sustained from a terrorist attack, which occurred while passengers were standing in line at their departure gate, occurred in the course of embarking). Additionally, in *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, the Supreme Court accepted that injuries resulting from a security search prior to boarding occurred in the course of embarking. 525 U.S. 155, 160, 167 (1999).

The Court therefore concludes that plaintiff was in the course of an operation of embarking when he attempted to enter the boarding area and was stopped from boarding by one of defendant's employees. Plaintiff's claim for emotional injuries falls within the scope of the Convention.

The Court must next decide whether the Convention provides a means of relief for plaintiff's claim. Recovery for claims of personal injuries suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking" are not available pursuant to state law when the Convention does not provide relief.  *See Id.* at 160–61.

Article 17(1) establishes air carrier liability for "death or bodily injury" to a passenger that results from an accident. *See* Montreal Convention, art. 17(1), 1999 WL 33292734, at *33. "[E]motional injuries are not recoverable under Article 17 of the Montreal Convention or Warsaw Convention unless they were caused by physical injuries." *Bassam v. Am. Airlines*, 287 F. App'x 309, 317–18 (5th Cir. 2008); s*ee also E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991) ("We now hold that Article 17 does not allow recovery for purely mental injuries."). Plaintiff does not allege that he

suffered any physical injuries in his complaint. The Convention therefore does not provide a means of relief for plaintiff's claim. Because the Convention provides no basis of relief for plaintiff's emotional injuries, his state-law claim for intentional infliction of emotional distress is barred.

   iv.    *Punitive Damages*

Plaintiff requests that the Court award him punitive damages, among other categories of damages requested.[52] Defendant asks that plaintiff's request for punitive damages be dismissed because it is preempted by the ADA.[53] Defendant argues that any claim for punitive damages—when it is based on a breach-of-contract claim that relates to rates, routes, or services—falls outside the *Wolens* exception because it expands a plaintiff's rights beyond the terms of the contract.[54]

Defendant cites no cases within the Fifth Circuit for this proposition. Nor is the Court aware of any cases in the Fifth Circuit to address this question. However, the Court notes that several other courts have concluded that the ADA preempts certain punitive damages. *See, e.g.*, *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (concluding that the ADA preempted a claim for punitive damages for the plaintiff's contract claim relating to services because punitive damages represent an "enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement" (quoting *Wolens*, 513 U.S. at 233)); *West v. N.W. Airlines, Inc.*, 995 F.2d 148, 151 (9th Cir. 1993)

---

[52] R. Doc. No. 1, at 2.
[53] R. Doc. No. 6-1, at 10.
[54] *Id.*

(holding that the ADA preempts "punitive damages under state contract and tort law").

The purpose of punitive damages is to punish a party for its wrongful conduct and to deter others from similar behavior. *Edmonson v. Cnty. of Van Zandt*, 15 F.3d 180, 1994 WL 24912, at *4 (5th Cir. 1994) (unpublished). Awarding punitive damages for a contractual claim therefore necessarily enlarges and enhances the plaintiff's claim beyond what it is entitled to pursuant to the terms of its privately ordered agreement. The Court concludes that plaintiff's requests for punitive damages for his contractual claims is preempted by the ADA. Because only plaintiff's contractual claims remain, the Court need not address whether punitive damages are preempted with respect to plaintiff's other claims.

### c.    Supplemental Jurisdiction

Having dismissed plaintiff's federal claims, and having addressed the questions of federal preemption that bear upon plaintiff's state-law claims, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining breach-of-contract claim and claim for breach of the duty of good faith and fair dealing.[55] A district court has "wide discretion" when deciding whether it should retain jurisdiction over state-law claims once all federal claims have been eliminated. *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). However, the general rule

---

[55] Jurisdiction for this lawsuit was originally premised upon the federal questions presented by plaintiff's claims. *See* R. Doc. No. 1, at 2–3. The Court notes that 28 U.S.C. § 1332 affords no alternative basis for continued original jurisdiction over this dispute because the amount in controversy is not greater than $75,000. *See id.* at 8.

in the Fifth Circuit is "to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

A district court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to these factors, the Fifth Circuit has instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

These factors weigh in favor of dismissing plaintiff's breach-of-contract claim without prejudice so that he may assert that claim in state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, allowing state courts to rule on state law "encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Bitte v. EMC Mortgage Corp.*, No. 07-9273, 2009 WL 1950911, at *2 (E.D. La. July 1, 2009) (Africk, J.) (citations omitted) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,

726 (1966)). "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.*

Therefore, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining claim for breach-of-contract and breach of the duty of good faith and fair dealing brought pursuant to state law. That claim is dismissed without prejudice, as ordered below.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to plaintiff's claims for violations of the FAA as amended, violations of DOT regulations, intentional infliction of emotional distress, fraud, and punitive damages. These claims are **DISMISSED WITH PREJUDICE**. Defendant's motion is **DENIED** with respect to plaintiff's breach-of-contract claim and claim for breach of the duty of good faith and fair dealing.

**IT IS FURTHER ORDERED** that plaintiff's breach-of-contract claim and plaintiff's claim for breach of the duty of good faith and fair dealing are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, February 11, 2025.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**